IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

DEBRA A. BOND, Personal Representative
for the Estate of JESSICA M. BOND,
Deceased,

                    Plaintiff,                    Case No.  2:18-cv-13114

vs.                                               Hon.

UNITED STATES OF AMERICA,

                    Defendant.

---

BRIAN J. McKEEN (34123)
ANDREW F. KAY (P73707)
McKEEN & ASSOCIATES, P.C.
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, Michigan 48226
(313) 961-4400

---

## COMPLAINT AND AFFIDAVITS OF MERITORIOUS CLAIM

### PRELIMINARY STATEMENT

1.     Plaintiff, DEBRA A. BOND was the natural mother of JESSICA M. BOND, deceased.

2.     October 7, 2014, DEBRA A. BOND was duly appointed Personal Representative of the Estate of JESSICA M. BOND, deceased, in the Saginaw County Probate Court by the Honorable Patrick J. McGraw.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

3.     Plaintiff, DEBRA A. BOND, was a resident of the City of Saginaw, County of Saginaw, State of Michigan, at the time of the malpractice alleged in this matter.

4.     Plaintiff's decedent, JESSICA M. BOND, was a resident of the City of Saginaw, County of Saginaw, State of Michigan, at the time of the malpractice alleged in this matter.

5.     Plaintiff brings this action against the Defendant, United States of America under the Federal Tort Claims Act.

6.     KRISTINA JORDAN, FNP, is a Michigan licensed nurse practitioner, who was practicing family medicine in the City of Saginaw, County of Saginaw, State of Michigan, at the time of the malpractice alleged in this matter.

7.     LISA GARRISON, MA, is a Michigan certified medical assistant, who was assisting in family medicine in the City of Saginaw, County of Saginaw, State of Michigan, at the time of the malpractice alleged in this matter.

8.     ENAM HANNA, M.D., is a Michigan licensed physician, who was practicing family medicine in the City of Saginaw, County of Saginaw, State of Michigan, at the time of the malpractice alleged in this matter.

9.     At all times pertinent to the allegations in this Complaint, HEALTH DELIVERY, INC, a Michigan Nonprofit Corporation, d/b/a HDI Express (hereafter HDI) was an executive agency of the United States government.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

10.   At all times pertinent to the allegations in this Complaint, HEALTH DELIVERY, INC, a Michigan Nonprofit Corporation, d/b/a Great Lakes Bay Health Centers (hereafter Great Lakes Bay Health) was an executive agency of the United States government.

11.   At all times pertinent to the allegations in this Complaint, Kristina Jordan, FNP, and Lisa Garrison, MA, were employed by HDI and United States of America.

12.   At all times pertinent to the allegations in this Complaint, Enam Hanna, M.D. was employed by Great Lakes Bay Health and United States of America.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1331 and 1346(b).

14. On or about December 10, 2013, Plaintiff submitted an Administrative Tort Claim to Claims Office CELB/GLD/OGC and the U.S. Department of Health and Human Services.   Plaintiff's claim was denied on December 12, 2016; therefore, Plaintiff has exhausted all available administrative remedies.

15. Venue is properly with this District under U.S.C. § 1402(b) as the acts that are the subject of this Complaint occurred in Saginaw County at the time of the malpractice and at that time the Plaintiff and Plaintiff's decedent resided in Saginaw County.

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI 48226   ●   (313) 961-4400

## PARTIES

16. At all times relevant hereto the Plaintiff, Debra A. Bond, was a resident of the City of Saginaw, County of Saginaw, State of Michigan.

17. At all times relevant hereto, the Plaintiff's decedent, Jessica M. Bond, was a resident of the City of Saginaw, County of Saginaw, State of Michigan.

18. At all times relevant hereto, Kristina Jordan, FNP, was a family nurse practitioner employed by HDI, an executive agency of the United States of America.

19. At all times relevant hereto, Kristina Jordan, FNP, was acting within the scope of her employment with HDI, as such, the Defendant, the United States of America is the appropriate Defendant.

20. At all times relevant hereto, Lisa Garrison, MA, was a medical assistant employed by HDI, an executive agency of the United States of America.

21. At all times relevant hereto, Lisa Garrison, MA, was acting within the scope of her employment with HDI, as such, the Defendant, the United States of America is the appropriate Defendant.

22. At all times relevant hereto, Enam Hanna, M.D., was a family medicine physician employed by Great Lakes Bay Health, an executive agency of the United States of America.

23. At all times relevant hereto, Enam Hanna, M.D., was acting within the scope of his employment with Great Lakes Bay Health, as such, the Defendant, the United States of America is the appropriate Defendant.

## FACTUAL ALLEGATIONS

24. The Plaintiff realleges paragraphs 1 through 23 as if set forth fully herein.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

25.  This action concerns the death of Jessica M. Bond, a 25-year-old mother of one young child who lived in Saginaw and worked as a social worker at the Department of Human Services in Genesee County.

26.  Jessica had a history of exercise-induced asthma that had not required treatment for at least 2 to 3 years.

27.  Jessica had no other known significant medical history, however, upon information and belief, Jessica was at increased risk for venous thromboembolism due to her use of the hormonal contraceptive LoSeasonique.

28.  On July 2, 2012, at approximately 12:15 pm, Jessica presented to Health Delivery, Inc.'s HDI Express Clinic located in Saginaw.

29.  Jessica complained of a dry cough, intermittent shortness of breath, and moderate right-sided chest pain that worsened during inspiration.

30.  The medical record indicates that a complete and accurate medication history was not obtained given that LoSeasonique was not listed as one of Jessica's current medications.

31.  Lisa Garrison, MA, obtained an incomplete set of vital signs.  Only a pulse (92 bpm), blood pressure (110/72 mmHg), and temperature (98.1°F) were obtained.

32.  A respiratory rate and pulse oximetry reading were not recorded, however, there was an attempt to obtain a pulse oximetry reading by Lisa Garrison, MA, as evidenced by a text message which Jessica sent to her sister, Melisa Melton, at 12:21 p.m. which reads, "*I'm at the Drs now and they put that thing on my finger to check my heartbeat the lady thought it was broke so she put a different one on me but the reading came back the same so she said I guess it wasn't*

- 5 -

*broke"*.  This indicates that Jessica's blood oxygen saturation and/or heart rate were abnormal.

33. A physical examination was performed by family nurse practitioner Kristina Jordan.  According to the medical record, Jessica was in no apparent distress. NP Jordan did note an increased heart rate, moderately delayed expiratory phase upon auscultation of the lungs, and tenderness to palpation of the right lateral chest.

34. An EKG was performed by the staff that day which confirmed significant tachycardia.

35. NP Jordan consulted with Enam Hanna, M.D. with Great Lakes Bay Health and sent over the EKG for her review.

36. Although the EKG strip showed classic findings of a pulmonary embolism, Dr. Hanna did not provide such a diagnosis or insist that Jessica be transported emergently to the nearest Emergency Room.

37. Jessica was diagnosed with anxiety, asthma, shortness of breath, sinus tachycardia, and atypical chest pain.

38. Despite the fact that the Plaintiff's decedent complained of anxiety, shortness of breath, cough, elevated heart rate, chest pain, and abnormal blood oxygen saturation, which are all signs and symptoms of pulmonary embolism, there is no indication that NP Jordan included venous thromboembolism in her differential diagnosis and/or inquired about Jessica's risk factors for venous thromboembolism, such as the use of a hormonal contraceptive.

39. There is no record of a respiratory rate or repeat vital sign measures were obtained at any point during this clinic visit.

40. Kristina Jordan, FNP and Lisa Garrison, MA, sent Jessica home with

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI  48226   ●   (313) 961-4400

prescriptions for hydroxyzine (an antihistamine), loratadine (another antihistamine), and albuterol sulfate (an inhaler).

41. The next day, July 3, 2012, the decedent's shortness of breath worsened and she called 911 just before 9:00 pm.

42. Upon the arrival of EMS (Mobile Medical Response), Jessica complained of shortness of breath, chest pain, chest palpitations, nausea, and weakness.  She was noted to be tachycardic, tachypneic, and anxious.

43. En route the hospital, Jessica became unresponsive.

44. Upon her arrival to Covenant Hospital at 9:33 pm, Jessica was in cardiac arrest and the health care providers at the hospital were unable to revive her.

45. Jessica was pronounced dead at 10:44 p.m.

46. An autopsy revealed fresh thrombosis in the deep pelvic veins, emboli in both main pulmonary arteries and proximal branches, and pulmonary infarcts in both lungs.

47. The autopsy determined that Jessica died of pulmonary embolism due to deep vein thrombosis.

## <u>COUNT I FEDERAL TORT CLAIM ACT – MEDICAL NEGLIGENCE OF KRISTINA JORDAN, FNP</u>

48. Plaintiff realleges paragraphs 1 through 47 as if set forth fully herein.

49. At all times pertinent hereto, Kristina Jordan, FNP, owed a duty to the Plaintiff's decedent, Jessica M. Bond, to render medical treatment in a reasonable and prudent manner consistent with the applicable standard of care for nurse practitioners practicing family medicine.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

50. Notwithstanding her suspected duty, Kristina Jordan, FNP, was professionally negligent and breached her duties to the Plaintiff's decedent, Jessica M. Bond, in the following ways:

a. Given her signs and symptoms, by failing to recognize that the decedent's signs and symptoms were highly likely to be associated with Pulmonary Embolism and to send Plaintiff's decedent urgently to an Emergency Room where a complete comprehensive diagnostic workup would have been done and live saving treatment initiated;

b. By failing to perform a comprehensive evaluation including documentation of pulse oximetry level, respiratory rate, or any repeat vital sign measurements while at the clinic;

c. By misdiagnosing Plaintiff's decedent's symptoms as being related to asthma when they were classic for Pulmonary Embolism;

d. By failing to perform a complete and accurate history and/or physical examination including but not limited to a history of the use of contraceptives and the failure to obtain, document, or otherwise record a pulse oximetry reading which was probably abnormally low;

e. By failing to recognize that the signs and symptoms presented by Ms. Bond could be associated pulmonary embolism;

f. By the failure of the staff to send Ms. Bond directly to the Emergency

- 8 -

Room for evaluation of possible pulmonary embolism.

g.  By failing to order additional diagnostic testing;

h.  By failing to have adequate and/or properly functioning diagnostic equipment;

i.  By failing to perform a complete and accurate history and/or physical examination including but not limited to a history of the use of contraceptives and the failure to obtain, document, or otherwise record a pulse oximetry reading which was probably abnormally low;

j.  By failing to realize the seriousness of the Plaintiff's decedent's then existing condition, when same could and should have been accomplished;

k.  By failing to formulate an adequate differential diagnosis taking into consideration complaints, signs and symptoms then and there existing, and to thereafter properly treat Plaintiff's decedent in accordance with the applicable and acceptable standard of care;

l.  By employing physicians, surgeons, radiologists, residents, interns, and other personnel who are unskilled, incompetent and unfit for such employment and in permitting them to attend, advise, diagnose and treat Plaintiff's decedent;

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI  48226   ●   (313) 961-4400

m. By failing and neglecting to provide and furnish Plaintiff's decedent with the proper and necessary medical care and treatment for which he had contracted;

n. By failing to possess and/or utilize the requisite degree of experience, knowledge, skill and training necessary and required to properly diagnose and treat Plaintiff's decedent's condition;

o. By failing to formulate an adequate differential diagnosis taking into consideration complaints, signs and symptoms then and there existing, and to thereafter properly treat Plaintiff's decedent in accordance with the applicable and acceptable standard of care;

p. By failing to ensure that personnel employed to render medical or other services to patients such as Plaintiff's decedent were appropriately skilled, trained and experienced to perform such services;

q. By failing to hire personnel with appropriate training and experience to perform delegated patient care and services so as to avoid exposure of patients to unreasonable risk of harm;

r. By failing to hire personnel with appropriate training and experience to perform delegated patient care and services rendered by them;

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

s.  By the commission of other acts of negligence, malpractice and/or breach of contract which are herewith reserved for proof at the time of trial.

51. As a direct and proximate result of the above breaches in the standard of care by the Defendant, Kristina Jordan, FNP, the Plaintiff's decedent, Jessica M. Bond, was not properly evaluated and treated for pulmonary embolisms and/or DVTs which caused her untimely death.

## COUNT II FEDERAL TORT CLAIM ACT – MEDICAL NEGLIGENCE OF LISA GARRISON, MA

52. Plaintiff realleges paragraphs 1 through 51 as if set forth fully herein.

53. At all times pertinent hereto, Lisa Garrison, MA, owed a duty to the Plaintiff's decedent, Jessica M. Bond, to render medical treatment in a reasonable and prudent manner consistent with the applicable standard of care for medical assistants practicing in family medicine.

54. Notwithstanding her suspected duty, Lisa Garrison, MA, was professionally negligent and breached her duties to the Plaintiff's decedent, Jessica M. Bond, in the following ways:

a.  Given her signs and symptoms, by failing to recognize that the decedent's signs and symptoms were highly likely to be associated with Pulmonary Embolism and to send Plaintiff's decedent urgently to an Emergency Room where a complete comprehensive diagnostic

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

workup would have been done and live saving treatment initiated;

b.  By failing to perform a comprehensive evaluation including documentation of pulse oximetry level, respiratory rate, or any repeat vital sign measurements while at the clinic;

c.  By misdiagnosing Plaintiff's decedent's symptoms as being related to asthma when they were classic for Pulmonary Embolism;

d.  By failing to perform a complete and accurate history and/or physical examination including but not limited to a history of the use of contraceptives and the failure to obtain, document, or otherwise record a pulse oximetry reading which was probably abnormally low;

e.  By failing to recognize that the signs and symptoms presented by Ms. Bond could be associated pulmonary embolism;

f.  By the failure of the staff to send Ms. Bond directly to the Emergency Room for evaluation of possible pulmonary embolism.

g.  By failing to order additional diagnostic testing;

h.  By failing to consult with a physician during the evaluation and before discharge;

i.  By failing to have adequate and/or properly functioning diagnostic equipment;

j.  By failing to perform a complete and accurate history and/or physical

- 12 -

examination including but not limited to a history of the use of contraceptives and the failure to obtain, document, or otherwise record a pulse oximetry reading which was probably abnormally low;

k.  By failing to realize the seriousness of the Plaintiff's decedent's then existing condition, when same could and should have been accomplished;

l.  By failing to formulate an adequate differential diagnosis taking into consideration complaints, signs and symptoms then and there existing, and to thereafter properly treat Plaintiff's decedent in accordance with the applicable and acceptable standard of care;

m.  By employing physicians, surgeons, radiologists, residents, interns, and other personnel who are unskilled, incompetent and unfit for such employment and in permitting them to attend, advise, diagnose and treat Plaintiff's decedent;

n.  By failing and neglecting to provide and furnish Plaintiff's decedent with the proper and necessary medical care and treatment for which he had contracted;

o.  By failing to possess and/or utilize the requisite degree of experience, knowledge, skill and training necessary and required to properly diagnose and treat Plaintiff's decedent's condition;

- 13 -

p.  By failing to formulate an adequate differential diagnosis taking into consideration complaints, signs and symptoms then and there existing, and to thereafter properly treat Plaintiff's decedent in accordance with the applicable and acceptable standard of care;

q.  By failing to ensure that personnel employed to render medical or other services to patients such as Plaintiff's decedent were appropriately skilled, trained and experienced to perform such services;

r.  By failing to hire personnel with appropriate training and experience to perform delegated patient care and services so as to avoid exposure of patients to unreasonable risk of harm;

s.  By failing to hire personnel with appropriate training and experience to perform delegated patient care and services rendered by them;

t.  By the commission of other acts of negligence, malpractice and/or breach of contract which are herewith reserved for proof at the time of trial.

55. As a direct and proximate result of the above breaches in the standard of care by the Defendant, Lisa M. Garrison, MA, the Plaintiff's decedent, Jessica M. Bond, was not properly evaluated and treated for pulmonary embolisms and/or DVTs which caused her untimely death.

McKeen & Associates, P.C.   ●   645 Griswold Street, Suite 4200   ●   Detroit, MI  48226   ●   (313) 961-4400

## COUNT III FEDERAL TORT CLAIM ACT – MEDICAL NEGLIGENCE OF ENAM HANNA, M.D.

56. Plaintiff realleges paragraphs 1 through 55 as if set forth fully herein.

57. At all times pertinent hereto, Enam Hanna, M.D., owed a duty to the Plaintiff's decedent, Jessica M. Bond, to render medical treatment in a reasonable and prudent manner consistent with the applicable standard of care for a physician practicing family medicine.

58. Notwithstanding her suspected duty, Enam Hanna, M.D., was professionally negligent and breached her duties to the Plaintiff's decedent, Jessica M. Bond, in the following ways:

a. Given her signs and symptoms, by failing to recognize that the decedent's signs and symptoms were highly likely to be associated with Pulmonary Embolism and to send Plaintiff's decedent urgently to an Emergency Room where a complete comprehensive diagnostic workup would have been done and live saving treatment initiated;

b. Failing to properly read the EKG strip which showed significant tachycardia;

c. Failing to recognize and appreciate the EKG strip evidenced significant tachycardia and recognize the findings as indicative of a Pulmonary Embolism;

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

d.  By misdiagnosing Plaintiff's decedent's symptoms as being related to asthma when they were classic for Pulmonary Embolism;

e.  By failing to recognize that the signs and symptoms presented by Ms. Bond could be associated pulmonary embolism;

f.  By the failure of the staff to send Ms. Bond directly to the Emergency Room for evaluation of possible pulmonary embolism.

g.  By failing to order additional diagnostic testing;

h.  By failing to realize the seriousness of the Plaintiff's decedent's then existing condition, when same could and should have been accomplished;

i.  By failing to formulate an adequate differential diagnosis taking into consideration complaints, signs and symptoms then and there existing, and to thereafter properly treat Plaintiff's decedent in accordance with the applicable and acceptable standard of care;

j.  By employing physicians, surgeons, radiologists, residents, interns, and other personnel who are unskilled, incompetent and unfit for such employment and in permitting them to attend, advise, diagnose and treat Plaintiff's decedent;

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

k. By failing and neglecting to provide and furnish Plaintiff's decedent with the proper and necessary medical care and treatment for which she had contracted;

l. By failing to possess and/or utilize the requisite degree of experience, knowledge, skill and training necessary and required to properly diagnose and treat Plaintiff's decedent's condition;

m. By failing to formulate an adequate differential diagnosis taking into consideration complaints, signs and symptoms then and there existing, and to thereafter properly treat Plaintiff's decedent in accordance with the applicable and acceptable standard of care;

n. By failing to ensure that personnel employed to render medical or other services to patients such as Plaintiff's decedent were appropriately skilled, trained and experienced to perform such services;

o. By failing to hire personnel with appropriate training and experience to perform delegated patient care and services so as to avoid exposure of patients to unreasonable risk of harm;

p. By failing to hire personnel with appropriate training and experience to perform delegated patient care and services rendered by them;

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

- 17 -

q. By the commission of other acts of negligence, malpractice and/or breach of contract which are herewith reserved for proof at the time of trial.

59. As a direct and proximate result of the above breaches in the standard of care by the Defendant, Enam Hanna, M.D., the Plaintiff's decedent, Jessica M. Bond, was not properly evaluated and treated for pulmonary embolisms and/or DVTs which caused her untimely death.

## COUNT IV FEDERAL TORT CLAIM ACT – MEDICAL NEGLIGENCE OF HEALTH DELIVERY, INC. d/b/a HDI EXPRESS

60. Plaintiff realleges paragraphs 1 through 59 as if set forth fully herein.

61. Defendant Health Delivery, Inc. d/b/a HDI Express was negligent, inter alia, in the following particulars, in that a licensed and accredited health care facility, through its agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, Kristina Jordan, FNP and Lisa Garrison, MA, when presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Jessica Bond, deceased, had a duty to:

a. Select, train, and monitor its employees, servants, agents, actual or ostensible, or its staff of nurse practitioners and medical assistants, to ensure that they are competent to perform optimum medical care and comply with the standard of care as described herein;

b. Provide qualified medical staff with the proper training and ability to meet Jessica Bond's needs, including, but not limited to, the

- 18 -

ability to safely and properly treat a patient with a cough, shortness of breath, elevated heart rate, anxiety, chest pain, and/or abnormal blood oxygen saturation;

c. Ensure that appropriate policies and procedures are adopted and followed, including, but not limited to, the safe and proper treatment of a patient with a cough, shortness of breath, elevated heart rate, anxiety, chest pain, and/or abnormal blood oxygen saturation;

d. By the commission of other acts of negligence, malpractice and/or breach of contract which are herewith reserved for proof at the time of trial.

62. As a direct and proximate result of the above breaches in the standard of care by the Defendant, Health Delivery, Inc. d/b/a HDI Express, the Plaintiff's decedent, Jessica M. Bond, was not properly evaluated and treated for pulmonary embolisms and/or DVTs which caused her untimely death.

## COUNT V FEDERAL TORT CLAIM ACT – MEDICAL NEGLIGENCE OF HEALTH DELIVERY, INC. d/b/a GREAT LAKES BAY HEALTH CENTERS

63. Plaintiff realleges paragraphs 1 through 62 as if set forth fully herein.

64. Defendant Health Delivery, Inc. d/b/a Great Lakes Bay Health Centers was negligent, inter alia, in the following particulars, in that a licensed and accredited health care facility, through its agents, actual and/or ostensible, servants, and/or employees, including, but not limited to, Enam Hanna, M.D., when

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI  48226  ●  (313) 961-4400

presented with a patient exhibiting the history, signs and symptoms such as those demonstrated by Jessica Bond, deceased, had a duty to:

    a.  Select, train, and monitor its employees, servants, agents, actual or ostensible, or its staff of nurse practitioners and medical assistants, to ensure that they are competent to perform optimum medical care and comply with the standard of care as described herein;

    b.  Provide qualified medical staff with the proper training and ability to meet Jessica Bond's needs, including, but not limited to, the ability to safely and properly treat a patient with a cough, shortness of breath, elevated heart rate, anxiety, chest pain, and/or abnormal blood oxygen saturation;

    c.  Ensure that appropriate policies and procedures are adopted and followed, including, but not limited to, the safe and proper treatment of a patient with a cough, shortness of breath, elevated heart rate, anxiety, chest pain, and/or abnormal blood oxygen saturation;

    d.  By the commission of other acts of negligence, malpractice and/or breach of contract which are herewith reserved for proof at the time of trial.

65. As a direct and proximate result of the above breaches in the standard of care by the Defendant, Health Delivery, Inc. d/b/a Great Lakes Bay Health Centers, the Plaintiff's decedent, Jessica M. Bond, was not properly evaluated and treated for pulmonary embolisms and/or DVTs which caused her untimely death.

McKeen & Associates, P.C. ● 645 Griswold Street, Suite 4200 ● Detroit, MI 48226 ● (313) 961-4400

## DAMAGES

66. Plaintiff realleges paragraphs 1 through 65 as if set forth fully herein.

67. As a direct and proximate result of the professional negligence and medical malpractice described above, the Plaintiff's decedent, Jessica M. Bond, was not properly evaluated for pulmonary embolisms and/or DVT, thus did not receive successful treatment for pulmonary embolisms and/or DVT, which caused her untimely death.

68. As a direct and proximate result of the professional negligence and medical malpractice described above, the Plaintiff, Debra A. Bond, has incurred funeral and medical expenses and has suffered a loss of consortium that is associated with the loss of a parent, child, and sibling and other damages which are deemed fair and just under all of the circumstances to those persons who may be entitled to such damages, including, but not limited to, necessary and reasonable expenses incurred or paid by reason of medical, hospital, funeral and burial expenses, pain and suffering endured by Plaintiff's decedent in the period of time extending between Defendants' acts of negligence, malpractice and/or breach of contract, and Plaintiff's decedent's ultimate expiration and loss to the family of Plaintiff's decedent's love, companionship, services and comfort, assistance with performing services, and income.

69. The United States of America is liable to Plaintiff under principles of actual agency and Respondeat Superior and actual agency because it employed Defendants Kristina Jordan, FNP, Lisa Garrison, MA, Enam Hanna, M.D. and owned and operated Health Delivery Inc. d/b/a HDI Express and Health Delivery, Inc. d/b/a Great Lakes Bay Health Centers.

McKeen & Associates, P.C.  ●  645 Griswold Street, Suite 4200  ●  Detroit, MI 48226  ●  (313) 961-4400

WHEREFORE, the Plaintiff, DEBRA A. BOND, respectfully requests compensatory damages, reasonable attorney fees and costs, and such other relief that is just and appropriate.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

*/s/Andrew F. Kay*

_____
BRIAN J. MCKEEN (P34123)
ANDREW F. KAY (P73707)
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
(313) 961-4400

DATED:  October 4, 2018

## CERTIFICATE OF SERVICE

I, Lee Ann Allen, hereby certify that on October 4, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Andrew F. Kay and the United States of America.

*s/Lee Ann Allen*

McKeen & Associates, PC
645 Griswold Street, Suite 4200
Detroit, MI 48226
313/961-4400
lallen@mckeenassociates.com

<u>**AFFIDAVIT OF MERITORIOUS CLAIM**</u>
**Of**
<u>**Karen Huisinga, FNP**</u>

*Re: Nelson Bond, P/R Jessica Bond vs Kristina Jordan FNP et al*

STATE OF WASHINGTON )
                                                  ) ss.
COUNTY OF KITSAP          )

I, Karen Huisinga, FNP being duly sworn, depose and state as follows:

1.      I certify that I have reviewed the Notice of Intent letter and medical

records supplied by the Plaintiff's attorney, which includes records from:

HDI Express Care (Urgent Care) – July 2nd, 2012
PCP Office Chart
Covenant Healthcare – July 3rd, 2012 to July 4, 2012
Autopsy and Toxicology Report

2.      At the time of this occurrence, in July 2012, and during the year immediately

preceding the relevant events described below, I was actively practicing as a certified

Nurse Practitioner, and more than 50% of my professional time was spent in either

teaching and/or the practice as a certified Nurse Practitioner.

3.      As part of my practice, I regularly see and treat patients like Ms. Bond who

present with a history of asthma and present with complaints of shortness of breath.

4.      Based upon my review of the medical records it is my understanding that

Jessica Bond was a 25-year-old mother of one young child who lived in Saginaw and

worked as a social worker at the Department of Human Services in Flint.  Jessica had a

history of exercise-induced asthma that had not required treatment for at least 2 to 3 years.

1

She had no other medical history. However, Jessica was at increased risk for venous thromboembolism due to her use of the hormonal contraceptive LoSeasonique.

On July 2, 2012, at approximately 12:15 pm, Jessica presented to Health Delivery, Inc.'s HDI Express Clinic located in Saginaw. She complained of a dry cough, intermittent shortness of breath, and moderate right-sided chest pain that worsened during inspiration. The medical record indicates that a complete and accurate medication history was not obtained because LoSeasonique was not listed as one of Jessica's current medications. Lisa Garrison, MA, obtained an incomplete set of vital signs. Only a pulse (92 bpm), blood pressure (110/72 mmHg), and temperature (98.1°F) were obtained. A respiratory rate and pulse oximetry reading were not recorded. However, it is my understanding that there was an attempt to obtain a pulse oximetry reading by Lisa Garrison, as evidenced by a text message which Jessica sent to her sister, Melisa Melton, at 12:21 pm. The text message reads, "*I'm at the drs now and they put that thing on my finger to check my heartbeat the lady thought it was broke so she put a different one on me but the reading came back the same so she said I guess it wasn't broke*". This suggests to me that Jessica's blood oxygen saturation and/or heart rate were abnormal.

A physical examination was performed by family nurse practitioner Kristina Jordan. According to the medical record, Jessica was in no apparent distress. NP Jordan did note an increased heart rate, moderately delayed expiratory phase upon auscultation of the lungs, and tenderness to palpation of the right lateral chest.

2

Jessica was diagnosed with anxiety, asthma, shortness of breath, sinus tachycardia, and atypical chest pain.  Despite the fact that anxiety, shortness of breath, cough, elevated heart rate, chest pain, and abnormal blood oxygen saturation are signs and symptoms of pulmonary embolism, there is no indication that NP Jordan included venous thromboembolism in the differential diagnosis and/or inquired about Jessica's risk factors for venous thromboembolism, such as the use of a hormonal contraceptive.

Given her signs and symptoms, Jessica required a comprehensive diagnostic workup and should have been sent to the hospital.  However, neither of those things were done.  It appears that no diagnostic testing was performed.  An ECG tracing may have been obtained, but the tracing was not included in the medical records provided.  There is no indication that a respiratory rate or any repeat vital sign measurements were obtained at any point during Jessica's treatment at the clinic.

NP Jordan incorrectly assumed that Jessica's signs and symptoms were related to asthma, even though her clinical picture was not consistent with that diagnosis.  Instead of sending her to a hospital for an appropriate diagnostic workup, NP Jordan sent Jessica home with prescriptions for hydroxyzine (an antihistamine), loratadine (another antihistamine), and albuterol sulfate (an inhaler).

The next day, Jessica's shortness of breath worsened and she called 911.  Upon the arrival of EMS, Jessica complained of shortness of breath, chest pain, chest palpitations, nausea, and weakness.  She was noted to be tachycardic, tachypneic, and anxious.  En route the hospital, Jessica became unresponsive.

Upon her arrival to Covenant Healthcare, Jessica was in cardiac arrest. Unfortunately, the health care providers at the hospital were unable to revive her. Jessica was pronounced dead at 10:44 pm.

An autopsy revealed fresh thrombosis in the deep pelvic veins, emboli in both main pulmonary arteries and proximal branches, and pulmonary infarcts in both lungs. It was determined that Jessica died of pulmonary embolism due to deep vein thrombosis.

5.      Based upon my knowledge and experience as a certified Nurse Practitioner, and based upon my review of the medical records from Health Delivery, Inc., it is my opinion that FNP Kristina Jordan and MA Lisa Garrison, and others caring for Ms. Bond on July 2, 2012, violated the applicable standard of care in the following ways:

   a.   By failing to perform a complete and accurate history and/or physical examination including but not limited to a history of the use of contraceptives and the failure to obtain, document, or otherwise record a pulse oximetry reading which was probably abnormally low.

   b.   By failing to recognize that the signs and symptoms presented by Ms. Bond could be associated pulmonary embolism.

   c.   By the failure of the staff to send Ms. Bond directly to the Emergency Room for evaluation of possible pulmonary embolism

   d.   By failing to order additional diagnostic testing.

6.      Within a reasonable degree of medical probability, the violations to the standard of care listed above were a proximate cause of her death. More likely than not, had Ms. Bond been sent to the Emergency Room, her pulmonary embolisms would have probably been detected and treated. Her death was therefore avoidable.

7.      My opinions are subject to change depending upon new or additional information, which I may receive, and review.

Further Affiant Sayeth Not.

_Karen Huisinga, FNP_

Signed and sworn to before me this

_30_ day of _June_, 2014.

Notary Public

_K. Bell_ County, _WA_

My Commission expires on: _03-01-2015_
_With seal affixed._

Notary Public
State of Washington
P E DAURON
My Appointment Expires Mar 1, 2015

5

## AFFIDAVIT OF MERITORIOUS CLAIM
## Of
## Robert A. Mulliken, M.D.

### *Re: Nelson Bond, P/R Jessica Bond vs Kristina Jordan FNP et al*

STATE OF ILLINOIS   )
                       ) ss.
COUNTY OF COOK   )

I, Robert A. Mulliken, M.D., being duly sworn, depose and state as follows:

1.      I certify that I have reviewed the Notice of Intent letter and medical records supplied by the Plaintiff's attorney, which includes records from:

> HDI Express Care (Urgent Care) – July 2nd, 2012
> PCP Office Chart
> Covenant Healthcare – July 3rd, 2012 to July 4, 2012
> Autopsy and Toxicology Report

2.      At the time of this occurrence, in July 2012, and during the year immediately preceding the relevant events described below, I was actively practicing as a Board certified Emergency Room physician, and more than 50% of my professional time was spent in either teaching and/or the practice as an Emergency Room physician.

3.      As part of my practice, I have extensive experience working with physician extenders in an Emergency/Urgent Care setting and regularly see and treat patients like Ms. Bond who present with a history of asthma and present with complaints of shortness of breath, atypical chest pain, anxiety and tachycardia.

4.      Based upon my review of the medical records it is my understanding that Jessica Bond was a 25-year-old mother of one young child who lived in Saginaw and worked as a social worker at the Department of Human Services in Flint.  Jessica had a history of exercise-induced asthma that had not required treatment for at least 2 to 3 years.

1

She had no other medical history.  However, Jessica was at increased risk for venous thromboembolism due to her use of the hormonal contraceptive LoSeasonique.

On July 2, 2012, at approximately 12:15 pm, Jessica presented to Health Delivery, Inc.'s HDI Express Clinic located in Saginaw. She complained of a dry cough, intermittent shortness of breath, and moderate right-sided chest pain that worsened during inspiration. The medical record indicates that a complete and accurate medication history was not obtained because LoSeasonique was not listed as one of Jessica's current medications. Lisa Garrison, MA, obtained an incomplete set of vital signs.  Only a pulse (92 bpm), blood pressure (110/72 mmHg), and temperature (98.1°F) were obtained.  A respiratory rate and pulse oximetry reading were not recorded.  However, it is my understanding that there was an attempt to obtain a pulse oximetry reading by Lisa Garrison, as evidenced by a text message which Jessica sent to her sister, Melisa Melton, at 12:21 pm.  The text message reads, "*I'm at the drs now and they put that thing on my finger to check my heartbeat the lady thought it was broke so she put a different one on me but the reading came back the same so she said I guess it wasn't broke*".  This suggests to me that Jessica's blood oxygen saturation and/or heart rate were abnormal.

A physical examination was performed by family nurse practitioner Kristina Jordan. According to the medical record, Jessica was in no apparent distress. NP Jordan did note an increased heart rate, moderately delayed expiratory phase upon auscultation of the lungs, and tenderness to palpation of the right lateral chest.

2

Jessica was diagnosed with anxiety, asthma, shortness of breath, sinus tachycardia, and atypical chest pain. Despite the fact that anxiety, shortness of breath, cough, elevated heart rate, chest pain, and abnormal blood oxygen saturation are signs and symptoms of pulmonary embolism, there is no indication that NP Jordan included venous thromboembolism in the differential diagnosis and/or inquired about Jessica's risk factors for venous thromboembolism, such as the use of a hormonal contraceptive.

Given her signs and symptoms, Jessica required a comprehensive diagnostic workup and should have been sent to the hospital. However, neither of those things were done. It appears that no diagnostic testing was performed. An ECG tracing was obtained, which is poorly labeled but shows sinus tachycardia at a rate of 126 bpm. There is no indication that a respiratory rate or any repeat vital sign measurements were obtained at any point during Jessica's treatment at the clinic.

NP Jordan incorrectly assumed that Jessica's signs and symptoms were related to asthma, even though her clinical picture was not consistent with that diagnosis. Instead of sending her to a hospital for an appropriate diagnostic workup, NP Jordan sent Jessica home with prescriptions for hydroxyzine (an antihistamine), loratadine (another antihistamine), and albuterol sulfate (an inhaler).

The next day, Jessica's shortness of breath worsened and she called 911. Upon the arrival of EMS, Jessica complained of shortness of breath, chest pain, chest palpitations, nausea, and weakness. She was noted to be tachycardic, tachypneic, and anxious. En route the hospital, Jessica became unresponsive.

Upon her arrival to Covenant Healthcare, Jessica was in cardiac arrest. Unfortunately, the health care providers at the hospital were unable to revive her. Jessica was pronounced

3

dead at 10:44 pm.

An autopsy revealed fresh thrombosis in the deep pelvic veins, emboli in both main pulmonary arteries and proximal branches, and pulmonary infarcts in both lungs.  It was determined that Jessica died of pulmonary embolism due to deep vein thrombosis.

     5.    Based upon my knowledge and experience as a board certified Emergency Room, with extensive experience collaborating with physician extenders, and based upon my review of the medical records from Health Delivery, Inc. (James Street Express Care), it is my opinion that FNP Kristina Jordan and MA Lisa Garrison, and others caring for Ms. Bond on July 2, 2012, violated the applicable standard of care in the following ways:

     a.    By failing to perform a complete and accurate history and/or physical examination including but not limited to a history of the use of contraceptives and the failure to obtain, document, or otherwise record a pulse oximetry reading which was probably abnormally low.

     b.    By failing to recognize that the constellation of signs and symptoms presented by Ms. Bond (atypical chest pain, anxiety, shortness of breath, and tachycardia) could be associated pulmonary embolism, and should have been high on their differential diagnosis list.

     c.    By the failure of the staff to urgently send Ms. Bond directly to a hospital Emergency Room for evaluation of possible pulmonary embolism

     d.    By failing to order additional diagnostic testing.

     6.    Within a reasonable degree of medical probability, the violations to the standard of care listed above were a proximate cause of her death.  More likely than not, had Ms. Bond been sent to the Emergency Room, her pulmonary embolisms would have

probably been detected and effectively treated, thus avoiding her death.    But for the negligence outlined above, it is my opinion that

7.    My opinions are subject to change depending upon new or additional information, which I may receive, and review.

Further Affiant Sayeth Not.

Robert A. Mulliken, M.D.

Signed and sworn to before me this

30TH day of June, 2014.

Notary Public

DuPage County, ILLINOIS

My Commission expires on: 07/02/2017
With seal affixed.

OFFICIAL SEAL
BRIAN E RUMMEL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXP. JULY 02, 2017